IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JERVIS NTSEILEFAC FEUTIA,

      Petitioner,

v.                                  No. 2:26-cv-01768-SMD-GBW

MARKWAYNE MULLIN, et al.,

      Respondents.

## ORDER GRANTING WRIT OF HABEAS CORPUS

**THIS MATTER** is before the Court on Petitioner's Pro Se Petition for a Writ of Habeas Corpus. Doc. 1. Having reviewed the petition, the response (Doc. 6), and the relevant law, the Court **GRANTS** Petitioner's request for the writ of habeas corpus.

## BACKGROUND

Petitioner Jervis Ntseilefac Feutia is a citizen of Cameroon who is currently detained at the Otero County Processing Center in Chaparral, New Mexico. Doc. 1 at 1. Petitioner first entered the United States without inspection on November 6, 2024. Doc. 6 at 1. Federal officials quickly apprehended Petitioner and placed him in their custody. *Id.* On December 23, 2024, the government released Petitioner on parole. *Id.* Petitioner then settled in El Paso, Texas. Doc. 1 at 5.

Petitioner attended a scheduled immigration hearing on May 5, 2026. Doc. 6 at 2. While there, ICE officers arrested and detained Petitioner, seemingly without a warrant or cause. *Id.* Respondents acknowledge that they "are not aware of any bad conduct by Petitioner, or any allegations that he has broken the law or otherwise violated the terms of his parole." *Id.* Petitioner's removal proceedings are ongoing and he is not subject to a final order of removal. *Id.*

Petitioner now seeks habeas relief on the grounds that his continued detention violates his Fifth Amendment Due Process rights.   Doc. 1 at 2–3.

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).  Federal courts have the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241.  This power extends to the review of immigration-relation detention. *Zadvydas v. Davis*, 533 U.S. 678, 686 (2001); *Riley v. I.N.S.*, 310 F.3d 1253, 1256 (10th Cir. 2002); *Ozturk v. Hyde*, 155 F.4th 187, 207 (2d Cir. 2025) ("In a sentence, the district courts have habeas jurisdiction because petitioners challenge the legality of their detention, not a removal order.") (J., Nathan, concurring).

## DISCUSSION

Petitioner was paroled into the United States under 8 U.S.C. § 1182(d)(5)(A).  That provision empowers the Secretary of Homeland Security to "in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." *Id.*  Parole can terminate automatically or on notice.  Parole terminates automatically if the parolee departs the United States or on the applicable expiration date.  8 C.F.R. § 212.5(e)(1).  If parole terminates automatically, DHS is not required to provide the parolee with written notice. *Id.*  Parole may also terminate if (1) the purpose for which parole was authorized has been accomplished or (2) a DHS official with the necessary authority determines that "neither humanitarian reasons nor public benefit warrants the continued presence of the noncitizen in the United States."  8 C.F.R. § 212.5(e)(2)(i).  If parole is terminated for either of these reasons, DHS

must give the parolee written notice of the termination. *Id.* After that written notice is issued, the non-citizen "shall be restored to the status that he or she had at the time of parole." *Id.*

I. Respondents' Revocation of Petitioner's Parole and Subsequent Detention of Him Violate the Fifth Amendment.

The Due Process Clause serves to "protect against the mistaken or unjustified deprivation of life, liberty, or property." *A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025). "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others . . . [thus it] must be seen within the protection of the [Fifth] Amendment." *Morrissey v. Brewer*, 408 U.S. 471, 482–83 (1972). Petitioner's Fifth Amendment claim is evaluated under the factors first articulated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): (1) the private interest affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used; and (3) the government's interest.

1. Private Interest

Petitioner has an indisputable interest in his personal liberty. Freedom from detention "lies at the core" of the Due Process Clause. *Turner v. Rogers*, 564 U.S. 431, 445 (2011); *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923); *see also Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1388 (10th Cir. 1981) ("No principle of international law is more fundamental than the concept that human beings should be free from arbitrary imprisonment."). When ICE arrested Petitioner, he had been living in the United States for over a year, obtained a valid driver's license, and began working for Uber. Doc. 1 at 3, 5. His private interest in continuing these activities and doing so without the interruption of custody is obvious. Moreover, the regulations reflect that the government must avoid placing parolees in extended custody following entry of to an exclusion, deportation, or removal order. "If the exclusion, deportation, or removal order cannot be executed

3

within a reasonable time, the alien *shall again be released on parole . . .*" 8 C.F.R. § 212.5(e)(2)(i) (emphasis added). The only exception is if an authorized official concludes that releasing the individual would harm the public interest. Although Petitioner is not subject to a final removal order, it is persuasive that the regulations specifically require release from detention if it becomes too lengthy.

The Court therefore finds that Petitioner's ongoing detention compromises his fundamental interest in physical liberty. *Doe v. Noem*, 817 F. Supp. 3d 27, 55 (D. Mass. 2026) ("When USCIS invited . . . parolees to submit their I-130 Petitions and move to this country, and DHS granted them multi-year terms of parole, the parolees had reasonable expectations that they would be entitled to retain their liberty pursuant to some additional quantum of process."); *Mohammadi v. Bondi*, No. C26-420, 2026 WL 607767, at *5 (W.D. Wash. Mar. 4, 2026) ("[A]n individual such as Petitioner who has been released on parole under § 1182(d)(5)(A), and has lived with relative freedom in the United States for a number of years, has a protected interest in not being detained.").

2. Erroneous Deprivation

There is also a serious risk of erroneous deprivation sans notice and an adjudicative hearing. The regulations account for this concern, obligating DHS to provide written notice when they terminate parole, but that measure was not taken here. 8 C.F.R. § 212.5(e)(2)(i). Nor have Respondents justified Petitioner's revocation, e.g., that the purpose of his parole has been accomplished, post hoc. Respondents readily admit that the revocation was not the result of "any crime or bad conduct by petitioner." Doc. 6 at 8. Respondents instead focus their briefing on the question of whether Petitioner falls into the class of individuals governed by 8 U.S.C. § 1225 or those who fall under 8 U.S.C. § 1226. Specifically, Respondents direct the Court's attention to the following statutory text:

4

> [W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A). Respondents are correct that Petitioner was never admitted to the United States. *Id.* In their view, Petitioner's detention is therefore mandatory because he has been "returned" to the § 1225 mandatory detention scheme. Doc. 6 at 7. But the statute's text states that a parolee is only returned to custody when the purposes of parole "have been served." 8 U.S.C. § 1182(d)(5)(A). The record is void of evidence that the Secretary made that finding at the time of Petitioner's arrest and Respondents do not argue that this condition has been met in their response.[1] It would appear then that the risk of erroneous deprivation is quite high, and likely occurred, when Respondents detained Petitioner without notice or explanation.

   3.  Government's Interest

The government has a general interest in protecting its borders, regulating immigration, and, at times, detaining people in that process. *Brolan v. United States*, 236 U.S. 216, 218 (1915). However, Respondents do not establish how detaining Petitioner furthers those interests. Again, there is no evidence that he is a flight risk or a danger to the community. Petitioner has dutifully followed the terms of his parole and worked to establish long-term connections in the United States. At minimum, DHS had to "follow its own regulations" and provide Petitioner written

---

[1] Respondents helpfully note that the Tenth Circuit's decision in *Marczak v. Green*, 971 F.2d 510 (10th Cir. 1992) could be interpreted to require that DHS make an individualized determination when revoking parole. Doc. 6 at 7. Courts have reached differing conclusions on this question. *Contrast Pablo-Mendoza v. Lynch*, 820 F. Supp. 3d 673, 682–84 (W.D. Mich. 2026) ("[J]ust as a grant of parole requires an individualized review, revocation of parole requires a case-by-case assessment to comply with the statute."); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025) (same); *Noori v. LaRose*, 807 F.Supp.3d 1146, 1164-68 (S.D. Cal. 2025) (same), *with Doe v. Noem*, 152 F.4th 272, 278–79, 285 (1st Cir. 2025) ("Plaintiffs have not demonstrated a strong likelihood of success in showing that under the statute, the Secretary must terminate these grants of parole under the [parole] program[s] on an individual basis"). Ultimately, however, the Court does not reach the question of how specific a decision to revoke parole must be. Because Respondents did not give Petitioner notice in the first instance, his detention is unlawful regardless of whether DHS had a reason for it.

notice.  *Energy W. Mining Co. v. Lyle ex rel. Lyle*, 929 F.3d 1202, 1209 (10th Cir. 2019); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).  Petitioner was also entitled to an adjudicative hearing where he can dispute the reasons for parole revocation prior to detention.  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)) (affirming that the Due Process clause generally "requires some kind of a hearing before the State deprives a person of liberty").  "Procedural safeguards would give Petitioner an opportunity to learn and address the reasons for the change and to make sure that his release is not being revoked arbitrarily."  *Noori v. LaRose*, No. 25-CV-03006, 2025 WL 3295386, at *3 (S.D. Cal. Nov. 26, 2025).

The Court finds that Respondents' detention of Petitioner violates his Fifth Amendment Due Process rights and that he is entitled to habeas relief.  *Pablo-Mendoza v. Lynch*, 820 F. Supp. 3d 673, 682–84 (W.D. Mich. 2026)*; Aldana v. Collins*, 822 F. Supp. 3d 747, 752 (W.D. Tex. 2026) ("[B]ecause the Court has found that Petitioner's grant of humanitarian parole was still valid when he was detained on September 3, 2025, the Court finds that Petitioner's detention is unlawful."); *Noori*, 2025 WL 3295386, at *3 ("[T]he Government's revocation of Petitioner's humanitarian parole without notification, individual consideration, reasoning, or an opportunity to be heard violated his Due Process rights."); *cf. Rodriguez v. Bondi*, 821 F. Supp. 3d 727, 730 (W.D. Tex. 2026) ("Because the Government released Petitioner and permitted him to live in the United States for over three years, they cannot revoke that liberty without an individualized determination of the need to do so.").

**CONCLUSION**

It is hereby **ORDERED**:

1)  The verified Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**;

2)  Respondents shall release Petitioner within 48 hours of this Order being entered;

6

3) Respondents shall facilitate Petitioner's transportation from the detention facility and provide identity documents sufficient to return to his primary address;

4) Respondents **SHALL** file a notice of compliance within two business days of Petitioner's release.  This notice must specify: (1) the date, (2) the time, and (3) the manner of departure (e.g., transport to a bus station, designated drop-off location, or other arrangements).  Additionally, the notice must include (4) a description or copies of all discharge and travel documents provided to Petitioner at the time of release;

5) Respondents **SHALL NOT** revoke Petitioner's parole without providing notice and a hearing before a neutral decision maker.

6) The Court will separately enter Final Judgment in favor of Petitioner but retain jurisdiction over this matter to ensure compliance with this Order.

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**